```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
ROSS JACKSON and THE GARY A.    :
ZEBROWSKI LIVING TRUST,         :
                                :
             Plaintiffs,        :
    -against-                   :
                                :         No. 17 Civ. 5276 (JFK)
HARVEST CAPITAL CREDIT          :         OPINION & ORDER
CORPORATION and CHRISTALS       :
ACQUISITIONS, LLC,              :
                                :
             Defendants.        :
------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/30/2018

APPEARANCES

FOR PLAINTIFFS ROSS JACKSON AND
THE GARY A. ZEBROWSKI LIVING TRUST:
    Lena Dvydan, Esq.
    STRONGIN ROTHMAN & ABRAMS, LLP
    John A. Hutchings, Esq.
    DILL DILL CARR STONBRAKER & HUTCHINGS, P.C.

FOR DEFENDANT HARVEST CAPITAL CREDIT CORPORATION:
    S. Wade Malone, Esq.
    M. David Possick, Esq.
    NELSON MULLINS RILEY & SCARBOROUGH LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Defendant Harvest Capital Credit Corporation ("Harvest") to dismiss Count II of Plaintiffs' Ross Jackson and the Gary A. Zebrowski Living Trust (together, "Plaintiffs") amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Harvest's motion is DENIED.

1

## I. Background

Unless otherwise noted, the following facts are drawn from the amended complaint. Plaintiff Ross Jackson ("Jackson") is an individual who resides and maintains a principal place of business in Colorado. (Am. Compl. ¶ 6.) Plaintiff the Gary A. Zebrowski Living Trust ("Zebrowski") is a trust formed under the laws of Oklahoma with its principal place of business in Pennsylvania. (Id. ¶ 7.) Harvest is a corporation that provides customized financing to small businesses through senior secured debt, organized under the laws of Delaware with its principal place of business in New York City. (Id. ¶ 8; Harvest's Mem. of L. in Supp. of Mot. to Dismiss at 1, ECF No. 23 (filed Aug. 29, 2017).) Defendant Christals Acquisitions, LLC ("Christals") is a limited liability company existing under the laws of Delaware with a principal place of business in Auburn, Washington. (Am. Compl. ¶ 9.)

On October 9, 2012, in connection with a Purchase Agreement (the "Purchase Agreement") between Christals, Plaintiffs, and Retail Services LLC, Christals issued to each of Jackson and Zebrowski an unsecured subordinated promissory note in the amount of $1,550,000 and a contingent subordinated promissory note in the amount of $150,000, both with a maturity date of January 9, 2017 (together, the "Promissory Notes"). (Id. ¶ 1.) The Promissory Notes were issued to Plaintiffs in connection

2

with the sale of businesses and assets owned by Plaintiffs. (Id. ¶ 3.) In order for Christals to complete such acquisition, on October 9, 2012, Christals entered into a Securities Purchase Agreement with Harvest (the "SPA") pursuant to which Christals issued to Harvest promissory notes and other evidence of indebtedness in favor of Harvest in amounts as much as $4,630,000 (the "Harvest Loan"). (Id.) Pursuant to the SPA, as security for the Harvest Loan, Christals granted a first and priority security interest in favor of Harvest in all of the assets which Christals acquired pursuant to the Purchase Agreement. (Id.)

On October 9, 2012, Christals, Harvest, and Plaintiffs entered into a Subordination Agreement (the "Subordination Agreement"), pursuant to which Plaintiffs subordinated the Promissory Notes to the Harvest Loan. (Id. ¶ 4.) Pursuant to the Subordination Agreement, Harvest agreed that it would not amend or modify the "Senior Note Documents" or consent or grant any waiver under the Senior Note Documents that would allow Christals to incur additional indebtedness to persons other than Harvest which would be senior to the Promissory Notes, other than indebtedness in a principal amount not exceeding $2 million. (Id. ¶¶ 26, 32.) "Senior Note Documents" is defined in the Subordination Agreement as "the 'Securities Purchase Agreement' and, together with the 'Note Documents' under and as

defined therein." (Subordination Agreement at 1, Am. Compl. Ex. E, ECF No. 11-5 (filed July 24, 2017).) Harvest also covenanted that there would be no indebtedness senior to the Promissory Notes of more than $6 million of outstanding principal at any time. (Am. Compl. ¶¶ 27, 33.)

On December 31, 2012, Christals formed Peekay Acquisition, LLC, as a wholly-owned subsidiary. (Id. ¶ 29.) That same day, Christals and Peekay entered into a Financing Agreement (the "December 2012 Financing Agreement") pursuant to which Christals and Peekay borrowed approximately $38 million—$27 million from Term A Lenders, and $11 million from Term B Lenders. (Id. ¶ 30.) Term A Lenders had priority over Term B Lenders. (Id.) As part of the December 2012 Financing Agreement, Harvest converted all or a substantial portion of the Harvest Loan to indebtedness owed by Christals and Peekay to Harvest as a Term B Lender under the December 2012 Financing Agreement. (Id.) On December 26, 2012, UCC Financing Statements in favor of Cortland Capital Markets Services, LLC, as collateral agent for the Term A and Term B Lenders under the December 2012 Financing Agreement, were filed with the Secretary of State of Texas and the County Clerk in Oklahoma County, Oklahoma. (Id. ¶ 31.) The UCC Financing Statements identified as collateral all of the assets which Christals acquired pursuant to the Purchase Agreement. (Id.) On December 31, 2012, Harvest filed Terminations of the UCC

4

Financing Statements with Texas and Oklahoma, fully releasing and relinquishing any interest Harvest had in the assets Christals acquired pursuant to the Purchase Agreement. (Id.)

On January 9, 2017, Christals failed to pay the Promissory Notes and, on January 10, 2017, Plaintiffs made written demand on Christals for payment. (Id. ¶¶ 2, 20-21.)  Plaintiffs allege that Christals' failure to pay the Promissory Notes is an Event of Default under Section 5(a) of the Promissory Notes and is therefore a breach of the Promissory Notes. (Id. ¶ 22.)

Plaintiffs filed the original complaint on July 12, 2017 and the amended complaint on July 24, 2017.  In the amended complaint, Plaintiffs allege one count against Christals for breach of the Promissory Notes and one count against Harvest for breach of the Subordination Agreement ("Count II").  Plaintiffs allege that Harvest's conduct related to the December 2012 Financing Agreement is an amendment and modification of the Senior Note Documents and a consent and grant of a waiver under the Senior Note Documents, which constitutes a breach of the Subordination Agreement. (Id. ¶¶ 32-33.) Specifically, Plaintiffs allege that Harvest breached Section 4(b) of the Subordination Agreement, because Harvest amended the Senior Note Documents by permitting Christals to incur additional indebtedness to persons other than Harvest which was senior to the Promissory Notes in an amount exceeding $2 million; and

Section 1.1 of the Subordination Agreement, because Harvest permitted indebtedness senior to the Promissory Notes of more than $6 million in outstanding principal. (Id. ¶ 33.)

On August 10, 2017, Christals filed for bankruptcy. (See Harvest Mem. of L. in Supp. of Mot. to Dismiss at 6 n.3.) Christals has not appeared in this action. On August 29, 2017, Harvest moved to dismiss Count II of the amended complaint. (See Motion to Dismiss, ECF No. 22 (filed Aug. 29, 2017).) Harvest argues that (1) Harvest's acceptance of the repayment of the Harvest financing and release of liens was expressly allowed by the Harvest Loan and Subordination Agreement, and (2) Harvest's acceptance of the payoff and release of its liens did not breach the Subordination Agreement.

## II. Discussion

### A. Failure to State a Claim Under Rule 12(b)(6)

#### 1. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011). In determining the adequacy of the complaint, the

Court may consider any document attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents which are integral to the complaint. Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). On a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw reasonable inferences in the plaintiff's favor. Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015). In addition, the Court "should resolve any contractual ambiguities in favor of the plaintiff." Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

To establish breach of contract under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the [claimant], (3) breach of contract by the [defendant], and (4) damages." Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 318 (S.D.N.Y. 2010). The claimant must identify the specific contractual provisions upon which the breach of contract claim is based. Id.

### 2. Analysis

Plaintiffs have plausibly alleged a breach of contract claim against Harvest. Under Section 4(b) of the Subordination Agreement, Harvest agreed that it would not

> amend or modify the Senior Note Documents,
> or consent or grant any waiver thereunder,
> which would allow the Loan Parties to incur

7

> additional Indebtedness to Persons other
> than the Senior Creditor which is senior to
> the Subordinated Debt other than (i)
> Indebtedness in a principal amount not
> exceeding $2,000,000; (ii) Indebtedness
> under a revolving credit facility in a
> principal amount not to exceed $2,000,000;
> and (iii) Indebtedness under purchase money
> financing and capital leases.

(Subordination Agreement § 4(b).) "Senior Note Documents" is defined in the Subordination Agreement as "the 'Securities Purchase Agreement' and, together with the 'Note Documents' under and as defined therein." (Id. at 1.) Under Section 1.1 of the Subordination Agreement, the "Senior Indebtedness shall consist of no more than $6,000,000 in outstanding principal amount at any time." (Id. § 1.1.)

Plaintiffs allege that pursuant to the Subordination Agreement, Christals' debt obligations to Plaintiffs, i.e., the Promissory Notes, were subordinated to Christals' indebtedness to Harvest, i.e., the Harvest Loan. (Am. Compl. ¶ 4.) Through the December 2012 Financing Agreement, "Harvest Capital converted all or a substantial portion of the [Harvest Loan] which Christals owed to Harvest Capital under the [SPA] to indebtedness owed by Christals and Peekay to Harvest Capital as a Term B Lender." (Id. ¶ 30.) Plaintiffs also allege that under the December 2012 Financing Agreement, Christals borrowed $27 million from Term A Lenders, who had priority over Harvest as a Term B Lender. (Id.) Thus, Plaintiffs have adequately alleged

8

that Harvest allowed an amendment or modification of the Senior Note Documents—namely, the indebtedness owed to Harvest under the SPA.  Plaintiffs have also alleged that this amendment or modification allowed Christals to incur more than $2 million in debt owed to persons other than Harvest that was senior to the Promissory Notes, and permitted indebtedness of more than $6 million in outstanding principal that was senior to the Promissory Notes. (Id. ¶¶ 32-33.)  Accordingly, Plaintiffs plausibly allege a claim against Harvest for breach of the Subordination Agreement.

In its motion to dismiss, Harvest first argues that certain contractual provisions of the SPA and Subordination Agreement expressly permitted Harvest's acceptance of the "payoff" and release of liens under the Harvest Loan Agreement. (Harvest Mem. of L. in Supp. of Mot. to Dismiss at 8.)  Harvest contends that Section 3.2 of the SPA expressly provided that Christals could repay—and Harvest was bound to accept repayment for—the Harvest Loan prior to maturity for any reason:  "The Borrowers also shall have the right, at its sole option and election, at any time or from time to time prior to the Maturity Date to redeem the Note." (Id.; Securities Purchase Agreement § 3.2(b), Possick Decl. Ex. 1, ECF No. 24-1 (filed Aug. 29, 2017).)  Harvest also argues that Section 3.2 of the SPA requires repayment of the Harvest Loan in the event Christals incurs additional debt:

9

> Issuance of Securities. Immediately upon
> the receipt by any Loan Party, or any
> Subsidiary thereof, of the Net Cash Proceeds
> . . . from the issuance of Indebtedness
> other than Indebtedness permitted hereunder,
> such Loan Party shall deliver, or cause to
> be delivered, to Holder an amount equal to
> 100% of such Net Cash Proceeds to be applied
> to the Obligations . . . .

(Id. § 3.2(c)(iii).) Finally, Harvest argues that Section 4(b) of the Subordination Agreement permits Harvest to "sell, exchange, release, or otherwise deal with any property pledged or mortgaged to secure or otherwise securing Senior Indebtedness[.]" (Harvest Mem. of L. in Supp. of Mot. to Dismiss at 9; Subordination Agreement § 4(b).)

Second, Harvest argues that its acceptance of the "payoff" of the Harvest Loan under the December 2012 Financing Agreement was not an amendment or modification of the SPA and Note Documents thereunder, but instead resulted in satisfaction of the Harvest Loan and thus, the Harvest Loan "terminated upon execution of the December 2012 Financing Agreement." (Harvest Mem. of. L. in Supp. of Mot. to Dismiss at 11.) Third, Harvest contends that even if its acts somehow constituted an amendment or modification of the SPA, Plaintiffs have not plausibly alleged that the December 2012 Financing Agreement created any debt senior to the Promissory Notes in excess of that allowed under the Subordination Agreement. (Id. at 12.)

Harvest's first and second arguments are premature on a motion to dismiss. Neither Section 3.2 of the SPA nor Section 4(b) of the Subordination Agreement is so unambiguous as to clearly preclude Plaintiffs' claims for breach of contract for modifying the indebtedness owed to Harvest under the SPA. Even if Section 3.2 of the SPA did require Harvest to accept repayment of the Harvest Loan, it is not clear based on the allegations in the amended complaint that the December 2012 Financing Agreement was in fact a "payoff," and not an amendment or modification, of the indebtedness owed under the Harvest Loan. Further, although Harvest argues that Section 4(b) permitted Harvest to release liens securing Senior Indebtedness, the same provision, upon which Plaintiffs' claim is partially based, prohibits Harvest from amending or modifying the Senior Note Documents to allow Christals to incur additional debt to persons other than Harvest in excess of $2 million that was senior to the Promissory Notes. Thus, the contractual language is not unambiguous so as to clearly support Harvest's arguments.

Moreover, on a motion to dismiss, the Court is required to draw reasonable inferences and resolve any contractual ambiguities in Plaintiffs' favor. See Luitpold Pharma, Inc. v. Ed. Geistich Sohne AG Fur Chemische Industrial, 784 F.3d 78, 85-86 (2d Cir. 2017). "[A]mbiguity exists where a contract term could suggest more than one meaning when viewed objectively by a

11

reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." <u>Bayerische Landesbank v. Aladdin Capital Mgmt. LLC</u>, 692 F.3d 42, 53 (2d Cir. 2012). That two plausible inferences may be drawn from factual allegations is not a choice to be made by the Court on a Rule 12(b)(6) motion, and in such case, a breach of contract claim must not be dismissed. <u>Anderson News LLC v. American Media, Inc.</u>, 680 F.3d 162, 185 (2d Cir. 2012). Plaintiffs' allegations of breach are plausible based on the plain language of the Subordination Agreement, and, thus, Harvest's arguments regarding alternate interpretations of the relevant contractual provisions are not appropriate at this stage.

Finally, as noted above, Plaintiffs have plausibly alleged that Harvest permitted Christals to incur debt senior to the Promissory Notes in excess of the amounts permitted under Sections 4(b) and 1.1 of the Subordination Agreement. Plaintiffs allege that through the Subordination Agreement, Plaintiffs subordinated the Promissory Notes to the indebtedness issued to Harvest in the Harvest Loan. (Am. Compl. ¶ 4.) Plaintiffs also allege that through the December 2012 Financing Agreement, "Harvest Capital converted all or a substantial portion of the [Harvest Loan] which Christals owed to Harvest

Capital under the [SPA] to indebtedness owed by Christals and Peekay to Harvest Capital as a Term B Lender" and that Christals borrowed $27 million from Term A Lenders, who had priority over Harvest as a Term B Lender. (See id. ¶ 30.) These allegations support a plausible inference that, through the December 2012 Financing Agreement, Harvest permitted Christals to incur debt that was senior to the Promissory Notes in excess of $6 million of outstanding principal, and was owed to persons other than Harvest in a principal amount exceeding $2 million, in breach of the Subordination Agreement.

## CONCLUSION

For the reasons stated above, Harvest's motion to dismiss Count II of Plaintiffs' amended complaint is DENIED. Harvest is directed to file an answer to Plaintiffs' complaint by May 25, 2018. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 22.

**SO ORDERED.**

Dated: New York, New York
April 30, 2018

John F. Keenan
United States District Judge